IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, and THE STATE OF TEXAS, *ex rel.* Cecilia Young, and CECILIA YOUNG, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>KINDRED HEALTHCARE, INC., KINDRED AT HOME, GIRLING HEALTH CARE, INC., and HARDEN HEALTHCARE, LLC,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case 1:18-cv-00806-RP<br><br>JURY TRIAL DEMANDED |

## **Defendants' Motion to Dismiss First Amended Complaint and Brief in Support**

Lucas C. Wohlford
State Bar No. 24070871
lwohlford@btlaw.com
**BARNES & THORNBURG LLP**
2121 N. Pearl St., Suite 700
Dallas, TX 75201-2469
Telephone: (214) 258-4200
Facsimile: (214) 258-4199

**ATTORNEYS FOR DEFENDANTS**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT.................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENTS AND AUTHORITIES .....................................................................................4

    I.    Standard of Review. ...............................................................................................4

    II.    Relator Fails to Plead Particularized Facts Sufficient to Allege the Knowing Presentment of a False Claim. ........................................................................................5

        A.    Relator Does Not Allege the Particulars of a Specific Fraudulent Presentment. ...................................................................................................6

        B.    Relator Fails to Allege with Particularity a Scheme to Present False Claims and Reliable Indicia Leading to a Strong Inference False Claims Were Submitted. .........................................................................................................7

    III.    Relator Fails to Particularly Allege Defendants Knowingly Made or Used a False Record or Statement Material to a False or Fraudulent Claim. .........................9

    IV.    Relator's State Law Claims Should Be Dismissed for the Same Reasons Requiring Dismissal of the FCA Claims. .......................................................................9

    V.    Relator's Impermissible Attempt at Group Pleading Requires Dismissal.................10

    VI.    Relator's Retaliation Claim Satisfies None of the Essential Elements.........................11

        A.    Relator's FCA Retaliation Claim Does Not Plead a Single Element of a Viable Cause of Action..........................................................................................11

        B.    Relator's TMFPA Retaliation Claim Suffers the Same Defects. .....................15

    VII.    Plaintiff's FLSA Allegations Fail as a Matter of Law. .....................................16

    VIII.    Any Allegations against KHI, KAH, and Harden Remain Deficient as a Matter of Law..............................................................................................................19

CONCLUSION.....................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S.Ct. 1937 (2009).................................................................................4

*Assoc. Builders, Inc. v. Alabama Power Co.,*
    505 F.2d 97 (5th Cir. 1974)...........................................................................................8

*United States ex rel. Babalola v. Sharma,*
    Civ. Act. No. H-11-4026, 2013 WL 431821 (S.D. Tex. Feb. 1, 2013)...........................10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955 (2007)..............................................................................4

*Clark Cty. Sch. Dist. v. Breeden,*
    532 U.S. 268 (2001)....................................................................................................15

*Collins-Laster v. Openroad Mgmt., Inc.,*
    A-18-CV-00120-LY, 2019 WL 3769961 (W.D. Tex. Aug. 9, 2019)................................17

*Dorsey v. Portfolio Equities, Inc.,*
    540 F.3d 333 (5th Cir. 2008) .........................................................................................5

*United States ex rel. Foster v. Bristol-Myers Squibb Co.,*
    587 F. Supp. 2d 805 (E.D. Tex. 2008)........................................................................5, 10

*Funk v. Stryker Corp.,*
    631 F.3d 777 (5th Cir. 2011) .......................................................................................19

*United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.,*
    748 F. Supp. 2d 95 (W.D. Tex. 2010)...........................................................................13

*United States ex rel. Grubbs v. Kanneganti,*
    565 F.3d 180 (5th Cir. 2009) ..................................................................................*passim*

*Guerrero v. Total Renal Care, Inc.,*
    No. EP-11-CV-449-KC, 2012 WL 899228 (W.D. Tex. Mar. 12, 2012) ..........................13

*United States ex rel. Guth v. Roedel, Parsons Koch Blache Balhoff & McCollister.,*
    Civ. Act. No. 13-6000, 2014 WL 7274913 (E.D. La. Dec. 18, 2014)................................7

*Harvill v. Westward Commc'ns, L.L.C.,*
    433 F.3d 428 (5th Cir. 2005) .......................................................................................16

*United States ex rel. Hendrickson v. Bank of America, NA,*
    343 F. Supp. 3d 610 (N.D. Tex. 2018), *aff'd* 779 F. App'x. 250 (5th Cir. 2019)................4

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.,*
    498 F. Supp. 2d 25 (D.D.C. 2007) ............................................................ 20

*Hopkins v. Actions, Inc.,*
    985 F. Supp. 706 (S.D. Tex. 1997) ........................................................... 15

*Hoyte v. Am. Nat'l Red Cross,*
    518 F.3d 61 (D.C. Cir. 2008) ................................................................. 12

*Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.,*
    579 F.3d 546 (5th Cir. 2009) ................................................................. 18

*United States ex rel. Johnson v. Raytheon Co.,*
    395 F. Supp. 3d 791 (N.D. Tex. 2019) ..................................................... 12

*Kansa Reinsurance Co. Ltd v. Cong. Mortgage Co. of Texas,*
    20 F.3d 1362 (5th Cir. 1994) ................................................................. 19

*United States ex rel. Ligai v. ETS-Lindgren,*
    Civ. Act. No. H-112973, 2014 WL 4649885 (S.D. Tex. Sept. 16, 2014) ...................... 12, 13, 15, 20

*United States ex rel. Long v GSD&M Idea City, LLC,*
    798 F.3d 265 (5th Cir. 2015) ................................................................. 19

*Newton v. City of Henderson,*
    47 F.3d 746 (5th Cir. 1995) ................................................................... 17

*Nichols v. Baylor Research Inst.,*
    418 F. Supp. 3d 143 (N.D. Tex. 2019) ..................................................... 13

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.,*
    519 F. App'x 890 (5th Cir. 2013) ............................................................. 5

*United States ex rel. Parikh v. Citizens Med. Ctr.,*
    977 F. Supp. 2d 654 (S.D. Tex. 2013) ....................................................... 7

*In re Parkcentral Global Lit.,*
    884 F. Supp. 2d 464 (N.D. Tex. 2012) ..................................................... 11

*United States ex rel. Patton v. Shaw Servs, LLC,*
    418 F. App'x 366 (5th Cir. 2011) ......................................................... 12, 16

*United States ex rel. Portilla v. Riverview Post Acute Care Ctr.,*
    Civ. No. 12-1842(KSH), 2014 WL 1293882 (D.N.J. Mar. 31, 2014) ......................... 13

*United States ex rel. Rafizadeh v. Cont'l Common, Inc.,*
    553 F.3d 869 (5th Cir. 2008) ................................................................. 5

*United States ex rel. Rigsby v. State Farm Fire & Cas. Co.,*
    794 F.3d 457 (5th Cir. 2015), *aff'd,* 137 S. Ct. 436 (2016) ..................................................... 9

*Robertson v. Bell Helicopter Textron, Inc.,*
    32 F.3d 948 (5th Cir. 1994) ............................................................................... 11, 12, 16

*United States ex rel. Rost v. Pfizer, Inc.,*
    446 F. Supp. 2d 6 (D. Mass. 2006), *aff'd in relevant part,* 507 F.3d 720 (1st Cir. 2007),
    *overruled on other grounds by Allison Engine v. United States ex rel. Sanders,* 553 U.S. 662
    (2008) ........................................................................................................................ 10

*Schiller v. Physician Res. Group, Inc.,*
    Civ. A. 3:97-CV-3158-L, 2002 WL 318441 (N.D. Tex., Feb. 26, 2002) .......................... 10

*United States ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah,*
    472 F.3d 702 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v.
    United States ex rel. Hunt,* 139 S.Ct. 1507 (2019) ......................................................... 20

*Simmons v. Peavy-Welsh Lunber Co.,*
    113 F.2d 812 (5th Cir. 1940) .................................................................................... 8

*Thomas v. ITT Educ. Servs., Inc.,*
    517 F. App'x 259 (5th Cir. 2013) ............................................................................ 11, 12

*United States. ex rel. Thompson v. Columbia/HCA Healthcare Corp.,*
    125 F.3d 899 (5th Cir. 1997) ................................................................................... 4, 5

*United Mine Workers of Am. v. Gibbs,*
    383 U.S. 715 (1966) ................................................................................................ 16

*United States v. City of Dallas,*
    Civ. Act. No. 3:09-CV-1452-O, 2011 WL 4912590 (N.D. Tex. Sept. 27, 2011) ...................... 15, 16

*Universal Health Servs, Inc. v. United States,*
    136 S. Ct. 1989 (2016) ............................................................................................. 4

*United States ex rel. Williams v. Martin-Baker Aircraft Co.,*
    389 F.3d 1251 (D.C. Cir. 2004) ............................................................................... 15

*Williams v. WMX Techs., Inc.,*
    112 F.3d 175 (5th Cir. 1997) ............................................................................... 5, 10, 11

*United States ex rel. Wismer v. Branch Banking & Trust Co.,*
    Civ. Act. No. 3:12-CV-1894, 2013 WL 5989312 (N.D. Tex. Nov. 12, 2013) ...................... 9

*United States ex rel. Yesudian v. Howard Univ.,*
    153 F.3d 731 (D.C. Cir. 1998) ............................................................................... 13

*Zannikos v. Oil Inspections, Inc.,*
    605 F. App'x 349 (5th Cir. 2015).............................................................................18

**Statutes**

29 U.S.C. § 203(r)(2)....................................................................................................17

29 U.S.C § 203(s)(1)....................................................................................................17

29 U.S.C. § 207(a)(1)...................................................................................................17

31 U.S.C. § 3729 *et seq.*..........................................................................................*passim*

31 U.S.C. § 3730(h)..............................................................................................11, 12

Tex. Hum. Res. Code § 36.001 *et seq.* (West 2013)...............................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 8..............................................................................1, 16

Federal Rule of Civil Procedure Rule 9(b).............................................................*passim*

Federal Rule of Civil Procedure Rule 12(b)(6).......................................................4, 19

Federal Rule of Evidence 201(b)................................................................................19

Private Securities Litigation Reform Act..................................................................11

**TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS:**

Defendants, Girling Health Care, Inc. ("Girling"), Harden Healthcare, LLC ("Harden"), Kindred Healthcare, Inc. ("KHI") and Kindred at Home ("KAH" and, with Girling, KHI, and Harden, "Defendants"), submit this Motion to Dismiss Relator's First Amended Complaint ("FAC") and would show the Court as follows:

### Preliminary Statement

After the United States and the State of Texas declined to intervene following a fourteen-month investigation, Relator Cecilia Young ("Young" or "Relator") opted to press on with amorphous allegations of violations of the False Claims Act ("FCA") and the Texas Medicaid Fraud Prevention Act ("TMFPA") in the provision of non-skilled, at-home personal care. Defendants moved to dismiss her Complaint and, in response, Relator filed her First Amended Complaint. Despite having a guide on how to rectify the ills of her Complaint, Relator's FAC suffers from the same glaring deficiencies as before, each of which require dismissal under Rule 8 and Rule 9(b). In her FAC, Relator does not allege the details of a single claim she alleges was false and knowingly submitted. *Not one.* Relator does not identify a single Coordinator who allegedly falsely verified time. *Not one.* Dismissal is required because the allegations of the "who, what, when, where, and how" required by Rule 9(b) are absent. Instead, Relator offers—and impermissibly relies on—generic labels, conclusory allegations, inappropriate pseudonyms, and impermissible group pleading, all of which are glaringly inadequate.

Furthermore, the alleged Fair Labor Standards Act ("FLSA") violations, brought as both individual and collective claims, are similarly flawed, as Relator does not plead (or merely parrots) essential elements, and her claim is time-barred under the applicable two-year statute of limitations. Finally, Relator offers no viable basis to hold direct and indirect corporate parents and affiliates liable for the alleged conduct of Girling. For these reasons, the FAC should be dismissed in its entirety.

## Background

In Texas, personal care attendants ("PCAs") provide non-skilled, at-home personal care and assistance to individuals. FAC ¶ 1. Sometimes, the Texas Health and Human Services Commission ("THHSC") determines how many hours of services each beneficiary can receive per week. *Id.* ¶ 56. After a client elects to receive care from a provider, the provider completes a schedule of the client's home services based on the number of authorized hours and services. *Id.* ¶ 57.

Relator acknowledges that "Defendants train their PCAs to validate home visits and service hours using Vesta." *Id.* ¶ 58. Based on guidance from the State of Texas, the time a PCA spends with a client can be verified automatically (requiring no further action by the provider), but if it is not, the provider must independently and manually verify hours by confirming the visit with the PCA and client to receive payment. *Id.* ¶¶ 59–61.

Relator generically references PCAs and Coordinators throughout her FAC, but she never identifies any PCA or Coordinator by name (other than through pseudonyms that provide no means to identify the alleged wrongdoer). *See generally* FAC. For example, Relator claims it was a "common practice" for "Coordinators" to check the boxes on the Vesta verification screen signifying they had contacted the PCA and client, even if they had not. *Id.* ¶ 75.

Relator contends internal audits conducted at Girling's Austin office revealed that visits verified by Coordinators were never conducted. *Id.* ¶ 78. In response, then-Director of the Austin office, Jane Wisniewski, emailed Coordinators discussing the findings of the audit and making clear, "We do not pay for hours not worked, nor do we bill for hours not worked." *Id.* ¶ 79. Relator does not know whether "Defendants" reimbursed the State of Texas for the hours identified during the above-referenced internal audit, but she states, without providing any basis, that "upon information and belief" Defendants did not. *Id.* ¶ 81.

Relator claims she was promoted to Office Manager and began calling clients to audit manually

verified visits. *Id.* ¶ 83. Relator contends she called about 50 clients per week, and about 30 clients said they did not receive a verification call. *Id.* And some unspecified percentage of those 30 clients allegedly did not receive the PCA visit. *Id.* Relator also claims she called PCAs during their visits and clients or their family members called Relator to complain they were not receiving PCA visits. *Id.* ¶¶ 84–85. Relator never identifies a single Coordinator or a single false claim that was knowingly submitted. *See generally* FAC. To the contrary, Relator acknowledges when she found an instance in which a verification call had not been made, she would amend the Vesta system, which prohibited the claim from being submitted or paid. *Id.* ¶ 86.

After filing the Original Complaint without naming a *single* patient for whom false bills were allegedly submitted, Relator now adds a series of unnamed "clients" who allegedly did not receive PCA visits for which "Defendants" allegedly falsely billed. *Id.* ¶¶ 87–130. But Relator provides no particularized details of any bill allegedly submitted related to any of these "clients." *Id.*

Relator claims she continued to audit and correct false verifications and coached Coordinators to comply with the verification procedures. *Id.* ¶ 133. Based on supervisors Laverne Fowler and Julie Eberwine's "overall message" to Relator, and Relator's purported summary of complaints to a KHI Compliance hotline (of which Relator does not assert Fowler and Eberwine were aware) Relator baldly concludes that Eberwine terminated her in retaliation. *Id.* ¶¶ 135–38. The FAC does not sufficiently allege any protected activity in which Relator engaged, does not plead facts showing the person who terminated her knew she was engaged in protected activity, or identify any nexus between her protected activity and an adverse employment action. *See generally id.*

On September 21, 2018, Relator Cecilia Young filed this action under seal. (Dkt. 1) On November 27, 2019, both the United States and the State of Texas declined to intervene in this action. (Dkt. 11) This Court unsealed the Complaint on December 6, 2019. (Dkt. 12) Relator subsequently served Defendants with the Complaint on January 29, 2020. Defendants filed their Motion to Dismiss

on March 23, 2020 (Dkt. 14), and rather than respond to that motion, Relator filed her FAC on April 22, 2020. (Dkt. 19)

## Arguments and Authorities

### I.      Standard of Review.

To survive a Rule 12(b)(6) motion for dismissal, a complaint must set forth factual allegations sufficient to "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955, 1959 (2007). While, in general, a civil complaint in federal court need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," this rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," or supersede the requirements of Federal Rule of Civil Procedure 9(b). *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S.Ct. 1937, 1950 (2009); *see also United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal citation omitted). A court must not accept conclusory allegations of fact as true. *Id.* at 1951.

As with all claims sounding in fraud, "False Claims Act plaintiffs must [] plead their claims with plausibility and particularity…." *Universal Health Servs, Inc. v. United States*, 136 S. Ct. 1989, 2004 n.6 (2016). In practice, this means that a plaintiff must allege more than "labels and conclusions" to satisfy the plausibility standard and allege "particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" to satisfy Rule 9(b). *See Twombly*, 550 U.S. at 555; *United States ex rel. Hendrickson v. Bank of America, NA*, 343 F. Supp. 3d 610, 632 (N.D. Tex. 2018) (internal citation omitted), *aff'd* 779 F. App'x. 250 (5th Cir. 2019). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,

125 F.3d 899, 903 (5ᵗʰ Cir. 1997) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). Here, to satisfy Rule 9(b), Relator must allege both the particular details of a scheme to present fraudulent bills to the government and facts supporting a ***strong inference*** that false claims were, in fact, submitted to the government. *See Grubbs*, 565 F.3d at 190–91.

## II.   Relator Fails to Plead Particularized Facts Sufficient to Allege the Knowing Present-ment of a False Claim.

Relator fails to adequately plead under 31 U.S.C. § 3729(a)(1)(A) that any Defendant knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval. Because the "linchpin of an FCA claim is a false claim," Relator must plead the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby" in accordance with Rule 9(b). *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (explaining that Rule 9(b) requires plaintiffs to identify the alleged fraudulent statements and the speaker, state the time and place of the statements, and explain how or why they were fraudulent).

"Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation." *United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 813 (E.D. Tex. 2008) (internal citation omitted). Relator must plead with particularity that a false claim was submitted for reimbursement, or, in those instances when a relator "cannot allege the details of an actually submitted false claim," a relator must allege "***particular*** details of a scheme to submit false claims paired with ***reliable indicia*** that lead to a ***strong inference*** that claims were actually submitted." *See Grubbs*, 565 F.3d at 190 (emphasis added). To overcome the necessity that a relator otherwise detail each particular bill, the Fifth Circuit confirmed that the other ways to plead this element still requires a relator to allege par-ticular facts sufficient to "demonstrate a strong inference of fraud." *See, e.g., United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893 (5ᵗʰ Cir. 2013).

A.    <u>Relator Does Not Allege the Particulars of a Specific Fraudulent Presentment.</u>

Relator fails to identify the particulars of a single "false" bill or claim that any "Defendant" purportedly sent to Medicaid. In fact, the FAC lacks any reference to a particular bill or claim allegedly presented for payment. Relator offers only a litany of general allegations that fail to provide the who, what, when, where, and how the unidentified claims purportedly submitted were false and fraudulent. The allegations related to the presentment element consist of the following:

- "At the end of the two-week pay period, Vesta will submit the verified hours to the THHSC or one of its contractors for payment." FAC ¶ 62;

- "Verifying hours in Vesta is thus ***tantamount*** to making a claim for payment to the THHSC." *Id.* ¶ 77 (emphasis added);

- "[O]n information and belief, Defendants did not reimburse the THHSC for hours for which Wiesniewski acknowledge [sic] had been fraudulently billed." *Id.* ¶ 81;

- "Accordingly, Defendants knowingly presented false or fraudulent claims for payment in violation of 31 U.S.C. § 3729(a)(1)(A)." *Id.* ¶ 160; and

- "By reason of the false or fraudulent claims that Defendants knowingly presented, the United States has been damaged in an amount to be proven at trial." *Id.* ¶ 162.

As for the "clients" identified by Relator, none of the allegations meet the heightened pleading standard of Rule 9(b). Relator does not for any of the purported "clients" allege the "details of an actually submitted false claim." *See Grubbs*, 565 F.3d at 190. For none of the "clients" does Relator allege the amount or date of the claim, or who submitted the claim. *Id.* ¶¶ 88–130. Instead of the particularity required by Rule 9(b), Relator offers conclusory or irrelevant allegations such as:

- "Defendants billed for visits that ['clients'] claimed not to have received." *Id.* ¶¶ 91, 103;

- Defendants had not verified "all of the visits which Defendants had falsely billed for ['client']." *Id.* ¶¶ 95, 99, 105, 109, 115, 120, 126, 130; and

- the PCA was unable to put the client on the phone. *Id.* ¶¶ 98, 108, 118, and 123.

None of these conclusions identifies a particular false claim that was knowingly presented, and so Relator fails to state a viable claim under the FCA.

B.    Relator Fails to Allege with Particularity a Scheme to Present False Claims and Reliable Indicia Leading to a Strong Inference False Claims Were Submitted.

Having failed to allege the details of a submitted false claim generally or with the particularity required under Rule 9(b), Relator can only survive a motion to dismiss under Rule 9(b) if she alleges *particular* facts of a "scheme" to submit false claims paired with *reliable* indicia sufficient to support a *strong inference* that false claims were actually submitted. *See Grubbs*, 565 F.3d at 190. Relator has not done so. Instead, Relator offers broad, conclusory allegations of her belief as to "Defendants'" general billing practices without pleading how these documents evidence the fraudulent nature of what, if any, claims were purportedly false. These allegations fail to satisfy Rule 9(b).

The FAC references an alleged scheme just once, and only about this Court's personal juris-diction over "Defendants." FAC ¶ 16.[1]  Nowhere else does Relator refer to, or attempt to allege the particular details of, this purported scheme. And "though the *Grubbs* court relaxed the standard for pleading presentment of false claims . . . it did not relax the pleading requirements for alleging the existence of the more crucial element—the scheme." *United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 671 (S.D. Tex. 2013). Relator alleges none of the needed details of the "scheme": who devised it and when; who disseminated it; who participated in it; who consented to it; who told her about it; or how it was carried out. This cannot withstand dismissal under Rule 9(b) and *Grubbs*.

Courts in the Fifth Circuit have consistently held that generic, conclusory allegations, such as those offered by Relator are insufficient. For example, in *United States ex rel. Guth v. Roedel, Parsons Koch Blache Balhoff & McCollister*, the court addressed a pleading style much like that presented here. Civ. Act. No. 13-6000, 2014 WL 7274913, at *5 (E.D. La. Dec. 18, 2014). There, the relator alleged that "[e]ach, every, and any" of defendant's legal bills constituted a false claim. *Id.* The court dismissed

---

[1] Relator alleges the "Court has personal jurisdiction over Defendants because Defendants . . . have carried out their fraudulent scheme in this District."

those claims explain because the relator failed "to identify any specific false claims, statements, or records" that satisfied Rule 9(b). *Id.* The court then contrasted relator's complaint with the *Grubbs* complaint finding that the complaint before it teemed with conclusory allegations devoid of factual details. *Id.* at *5–7.[2] The court dismissed that case finding no reliable indicia a fraudulent scheme existed and no basis to infer the defendant submitted false claims. *Id.* at *6–7. Similarly, the "undetailed assertions" Relator offers here fail to provide adequate notice of any allegedly false claims.

And Relator provides no reliable indicia leading to a strong inference of submission. To the contrary, she claims verifying visits in Vesta is "tantamount" to submitting a claim and seems to assume that "Vesta will submit the verified hours . . . for payment." Noticeably absent, however, is any allegation particularized in the detail required by Rule 9(b). Even assuming "Defendants" (or Vesta on its own) submitted claims, Relator's own pleading would preclude a finding of a knowing submission of a false claim. Exhibit D makes clear that there was no **scheme** to submit false or fraudulent claims for payment to the government: "*We do not pay for hours not worked, nor do we bill for hours not worked*." FAC ¶ 79. And while Relator claims "on information and belief" that "Defendants" did not reimburse THHSC for those hours, the FAC offers no basis for her belief. *Id.* ¶ 81. Because an exhibit attached to the FAC directly refutes Relator's assertions, her claims should be dismissed. *See Simmons v. Peavy-Welsh Lunber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("[w]here there is a conflict between allegations in a pleading and exhibits thereto . . . the exhibits control"); *see also Assoc.*

---

[2] Analyzing the complaint, the court in *Grubbs* found that "[relator] describes in detail, including the date, place, and participants, the dinner meeting at which two doctors in his section attempted to bring him into the fold of their ongoing fraudulent plot. He alleges his first-hand experience of the scheme unfolding as it related to him, describing how the weekend on-call nursing staff attempted to assist him in recording face-to-face physician visits that had not occurred. Also alleged are specific dates that each doctor falsely claimed to have provided services to patients and often the type of medical service or its Current Procedural Terminology code that would have been used in the bill." *Grubbs*, 565 F.3d at 191–92.

*Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("[i]f the appended document . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.").

As a result, Relator fails to plead with particularity facts showing a scheme, or reliable indicia leading to a strong inference that false claims were submitted for payment. Thus, dismissal of the FCA claims is required by Rule 9(b).

## III.   Relator Fails to Particularly Allege Defendants Knowingly Made or Used a False Record or Statement Material to a False or Fraudulent Claim.

The particularity requirements of Rule 9(b) apply with equal force to Relator's claim brought under the FCA's "record" provision, which requires Relator to "show that the claim presented for payment . . . was false," and that "Defendants" acted knowingly. *See* 31 U.S.C. § 3729(a)(1)(B); *see also United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 476–77 (5th Cir. 2015), *aff'd*, 137 S. Ct. 436 (2016); *see also Grubbs*, 565 F.3d at 193. Relator's failure to state a plausible claim that "Defendants" submitted a false or fraudulent claim requires dismissal of Relator's "record" claim as well, because Relator fails to adequately allege an underlying FCA violation. *See United States ex rel. Wismer v. Branch Banking & Trust Co.*, Civ. Act. No. 3:12-CV-1894, 2013 WL 5989312, at *7 (N.D. Tex. Nov. 12, 2013) ("[G]iven [the] failure to state a plausible fact-based theory showing [defendant] even submitted a false or fraudulent claim under the FCA, the Court cannot yet conclude that he has properly plead [defendant] 'knowingly' presented a false or fraudulent claim or 'knowingly' made a false record or statement."). For the reasons set forth *supra*, Relator's "record" claim must be dismissed because Relator has not adequately pleaded that "Defendants" "knowingly" created a false record or statement that was material, *i.e.,* for the purpose of, getting a false or fraudulent claim paid or approved.

## IV.   Relator's State Law Claims Should Be Dismissed for the Same Reasons Requiring Dismissal of the FCA Claims.

In Counts III and IV of her FAC, Relator inadequately pleads two false claims causes of action under the TMFPA, found at TEX. HUM. RES. CODE § 36.001 *et seq.* (West 2013). The TMFPA defines

as unlawful thirteen separate acts undertaken to defraud Medicaid (*id.* § 36.002), and authorizes private persons to bring civil actions against individuals who engage in those acts. *Id.* § 36.101.

A complaint that fails to state a claim for unlawful acts under the FCA also fails to state a claim for unlawful acts under the TMFPA. Federal courts have addressed claims under the FCA and state law analogues identically. For instance, in *United States ex rel. Rost v. Pfizer, Inc.*, 446 F. Supp. 2d 6 (D. Mass. 2006), *aff'd in relevant part,* 507 F.3d 720, 731 n.8 (1ˢᵗ Cir. 2007), *overruled on other grounds by Allison Engine v. United States ex rel. Sanders*, 553 U.S. 662 (2008), a relator articulated counts under both statutes. But the court mostly discussed the relator's federal count, noting only in a footnote that the relator also put forth a count under the state law analogue which, like other state laws, "extend[s] liability in situations virtually identical to those contained in the federal FCA." *Id.* at 12, n.13. Similarly, in *United States ex rel. Babalola v. Sharma*, Civ. Act. No. H-11-4026, 2013 WL 431821, at *2–5 (S.D. Tex. Feb. 1, 2013), the court noted the relator brought unlawful acts counts under both the FCA and TMFPA, but only considered whether the federal claim sufficed to survive summary judgment. Courts have also assumed that claims under state law false claims statutes, like FCA claims, must satisfy Rule 9(b). *See, e.g.*, *WMX Techs., Inc.*, 112 F.3d at 177 (applying Rule 9(b) to state fraud claims); *see also Bristol-Myers Squibb Co.*, 587 F. Supp. 2d at 827 (applying Rule 9(b) to TMFPA).

For the same reasons Relator's FAC fails to state a federal FCA claim, it fails to state a claim under the TMFPA. The claims should be dismissed.

**V.    Relator's Impermissible Attempt at Group Pleading Requires Dismissal.**

Although Relator sued ***four*** defendants, she made no attempt to allege which "Defendant" performed which allegedly wrongful act. Instead, she simply alleges that "Defendants" did one thing or another. Courts in the Fifth Circuit have repeatedly rejected group pleading in claims governed by Rule 9(b). *See Schiller v. Physician Res. Group, Inc.*, Civ. A. 3:97-CV-3158-L, 2002 WL 318441, at *5 (N.D. Tex., Feb. 26, 2002) ("The court holds that Plaintiffs have failed to satisfy Rule 9(b) with respect to

all purported misrepresentations or omissions that rely on 'group pleading.' Rule 9(b) requires Plaintiffs to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'") (citing *WMX Techs, Inc.,* 112 F.3d at 177–78);[3] *see also In re Parkcentral Global Lit.,* 884 F. Supp. 2d 464, 470–71 (N.D. Tex. 2012) ("Rule 9(b) requirements must be met as to each defendant. It is impermissible to make general allegations that lump all defendants together; rather, the complaint must segregate the alleged wrongdoing of one from another."). The FAC does not identify with particularity which, if any, of the specific "Defendants" engaged in which specific allegedly wrongful acts, nor does it allege with any particularity which, if any, of the specific "Defendants" possessed the knowledge required under the FCA. This blatant group pleading fails to satisfy Rule 9(b), and requires dismissal of these claims.

## VI.   Relator's Retaliation Claim Satisfies None of the Essential Elements.

### A.    Relator's FCA Retaliation Claim Does Not Plead a Single Element of a Viable Cause of Action.

Without addressing any of the requisite elements, Relator boldly claims her termination stemmed from retaliation. FAC ¶¶ 131–38. To state a claim under 31 U.S.C. § 3730(h), Relator must allege: (1) she was engaged in protected activity related to the FCA; (2) the employer knew she was engaged in protected activity; and (3) she was discharged because of her involvement in protected activity. *See Thomas v. ITT Educ. Servs., Inc.,* 517 F. App'x 259, 262 (5th Cir. 2013) (citing *Robertson v. Bell Helicopter Textron, Inc.,* 32 F.3d 948, 951 (5th Cir. 1994)).

---

[3] While *WMX* is a securities fraud case, the *WMX* court made it clear that the PSLRA did not apply to that case; however, the PSLRA simply codified the same standard that the court was applying under Rule 9(b). *See Williams,* 112 F.3d at 178 ("This suit was filed prior to the effective date of the Private Securities Litigation Reform Act, and while its provisions do not apply, the Act adopted the same standard we apply today."). In other words, the prohibition against group pleading applied to claims covered by Rule 9(b) before the enactment of the PSLRA, and that prohibition should equally apply to claims covered by Rule 9(b), like the FCA.

The FCA's retaliation provision protects actions "in furtherance of an action under this section or other efforts to stop 1 or more violations" of the FCA. 31 U.S.C. § 3730(h). To plead that an employer was properly on notice of protected activity, Relator cannot allege that she voiced concern over unethical practices or even about fraud in general. *See Thomas*, 517 F. App'x at 262–63; *see also United States ex rel. Patton v. Shaw Servs, LLC*, 418 F. App'x 366, 372 (5th Cir. 2011); *see also Robertson*, 32 F.3d at 951. Rather, to state a claim for retaliation under the FCA, Relator must plead that she informed her employer that she was concerned about the employer defrauding the government in violation of the FCA. *See Robertson*, 32 F.3d at 951; *see also Patton*, 418 F. App'x at 372; *see Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 68 (D.C. Cir. 2008) ("Hoyte's investigation was into mere regulatory noncompliance and did not concern 'false or fraudulent' claims as it must to support a retaliation claim…."). Courts in the Fifth Circuit have confirmed the overarching principle that "[a] protected activity is one motivated by a concern regarding fraud against the government." *United States ex rel. Johnson v. Raytheon Co.*, 395 F. Supp. 3d 791, 798 (N.D. Tex. 2019) (citation omitted).

Here, the FAC fails to adequately allege any activity protected under the FCA. *See generally* FAC. Relator's internal reports and audits about the alleged statutory noncompliance, including her purported August 22, 2018 call to KHI's compliance hotline, do not constitute protected activity under the FCA. Relator fails to plead that her motivation for reporting the alleged noncompliance with federal requirements was a concern about defrauding the government.[4] *See generally* FAC; *see also Hoyte*, 518 F.3d at 68; *United States ex rel. Ligai v. ETS-Lindgren*, Civ. Act. No. H-112973, 2014 WL 4649885,

---

[4] Even with the benefit of Defendants' Motion to Dismiss the Original Complaint, Relator fails here to remedy this deficiency. Relator now alleges that she said "***words to the effect*** that but for her audits, Defendants would be submitting false claims to Medicaid," and then conclusorily alleges Fowler and Eberwine's "***overall message***" in response. FAC ¶ 135 (emphasis added). Relator's conclusory and vague paraphrasing do not include allegations that she reported knowing fraud, merely that she reported the potential submission of false claims. Combined with her failure to assert that her ***motivation*** was to prevent fraud on the government, these allegations are insufficient and warrant dismissal.

at *6 (S.D. Tex. Sept. 16, 2014); *Nichols v. Baylor Research Inst.*, 418 F. Supp. 3d 143, 148–51 (N.D. Tex. 2019) (dismissing FCA retaliation claim where relator failed to allege that statutory noncompliance was reported because it constituted fraud against the federal government, and reporting violations, without more is different from trying to expose fraud against the government). Indeed, other than the impermissible use of conclusions and labels, the FAC lacks allegations sufficient to show Relator engaged in protected activity.

Similarly, the FAC lacks sufficient allegations showing or allowing an inference that any "Defendant" was aware Relator was engaged in protected activity. *See Guerrero v. Total Renal Care, Inc.,* No. EP-11-CV-449-KC, 2012 WL 899228, at *3 (W.D. Tex. Mar. 12, 2012). Here, Relator generically alleges that she "summarized the above allegations concerning Defendants' submission of false claims and Relator's discussions with Fowler and Eberwine," during a call to KHI's corporate compliance hotline. FAC ¶ 137. But Relator fails to allege whether she provided her name during the call such that KHI (much less the other "Defendants") even knew her identity, and her generic allegation of what she "summarized" during the purported call can only leave the Court guessing as to whether Relator reported her belief to any "Defendant" that the company was defrauding the federal government or that she was conducting any type of investigation into fraud against the government.[5] *See Ligai,* 2014 WL 4649885, at *17; *see also Guerrero,* 2012 WL 899228, at *7; *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 748 F. Supp. 2d 95, 104 (W.D. Tex. 2010). As courts have routinely found, "[m]erely grumbling to the employer …about regulatory violations does not…constitute protected activity." *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 743 (D.C. Cir. 1998); *see also United States ex rel. Portilla v. Riverview Post Acute Care Ctr.*, Civ. No. 12-1842(KSH), 2014 WL 1293882, at *18 (D.N.J. Mar. 31, 2014) (dismissing case in which employer did not know plaintiff was engaging

---

[5] For these reasons, the allegations about the purported compliance call cannot show protected activity.

in protected conduct because she only raised regulatory concerns). The allegations in the FAC do not allow for an inference that any "Defendant" knew Relator engaged in protected activity.

Finally, Relator offers no facts showing a causal connection between any allegedly protected activity and adverse employment action. Relator generally states that she was promoted from Coordinator to Office Manager in October 2017 and began auditing manually-verified visits, and, when she allegedly found false verifications, she required Coordinators to amend their false verifications. *Id.* ¶¶ 83–86. Relator contends that, at one time, her supervisors asked her about low utilization rates, and when Relator told her supervisors about the false verifications, Relator contends her supervisors "suggested that Relator not spend time calling clients or PCAs to audit visits." *Id.* ¶ 134. Relator claims that on or about August 22, 2018, she "summarized" allegations during a compliance hotline call for which she fails to identify the person with whom she spoke, the contents of her call, whether her call was anonymous, and whether Eberwine—the individual who fired her—even knew of the purported compliance call. *Id.* ¶ 137. Relator claims she continued to call clients to check whether they received visits, and "[i]n retaliation for Relator's efforts to reduce fraudulent billing, Eberwine terminated [her] employment on or about September 4, 2018." *Id.* ¶¶ 136, 138. So Relator seems to contend she was either terminated for actions taken at some unknown previous time, or, because of the "summarized" hotline call of which Relator does not allege Eberwine was even aware, the termination must have been retaliation. As noted above, courts routinely reject this position.

Relator does not allege that her employer instructed her to stop investigating mistakenly verified claims or threatened her with retaliatory action.[6] *See generally* FAC. Nor does she offer any facts to suggest she was terminated for reasons other than those stated in her personnel file. Although courts

---

[6] In fact, Relator seeks to artfully plead such an allegation without doing so. Rather, she vaguely paraphrases Fowler and Eberwine's "overall message" and what they said, "[i]n sum." *Id.* ¶ 135. If Fowler or Eberwine told Relator to stop investigating claims or threatened her with retaliation, Relator would have alleged as such.

have held that a complaint satisfactorily alleges causation by alleging that an employer took adverse action "just after" the employee engaged in protected activity, such time lapses must be short to allege that the protected activity caused the adverse employment action. *See United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1262 (D.C. Cir. 2004); *see also Hopkins v. Actions, Inc.*, 985 F. Supp. 706, 709 (S.D. Tex. 1997) (termination took place two days after protected activity). Although Relator tries to temporally tie the purported August 22, 2018 compliance call to her September 4, 2018 termination, she fails to allege what she actually said on the purported call or that Eberwine terminated Relator in response to—or was even aware of—the purported call. And like the dismissed complaint in *Ligai*, the FAC here offers no dates for Relator's alleged reporting to Eberwine and no dates showing that reporting was "very close" in time to her termination. *See Ligai*, 2014 WL 4649885, at *19–20; *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Relator offers no basis to support an inference of a causal connection between her auditing of manually-verified claims, her purported "summarized" allegations on a call of which Relator does not allege Eberwine was aware, and Relator's termination.

B.    Relator's TMFPA Retaliation Claim Suffers the Same Defects.

Like its federal counterpart, the TMFPA contains an anti-retaliation provision to protect private persons who pursue unlawful act claims under the statute, TEX. HUM. RES. CODE § 36.115. As with unlawful act counts, courts treat retaliation counts brought under the state and federal statutes identically. In *United States v. City of Dallas*, Civ. Act. No. 3:09-CV-1452-O, 2011 WL 4912590, at *5 (N.D. Tex. Sept. 27, 2011), the court considered whether retaliation counts brought under both statutes would survive summary judgment, first stating that "[t]o prevail on an FCA retaliation claim, a plaintiff must show that (1) he engaged in activity protected under the statute; (2) his employer knew he engaged in protected activity; and (3) his employer discharged him because of the protected activ-

ity." (*citing Patton*, 418 F. App'x at 371–72, which in turn cites *Robertson*, 32 F.3d at 951). After thoroughly discussing the merits of the FCA count, the court stated of the TMFPA count only that "the parties offer the same evidence and arguments that they offered with respect to [the] FCA retaliation claim." *Id.* at *9. The court offered no unique or independent analysis of the elements of the TMFPA retaliation claim, signifying that the elements are the same as those of an FCA retaliation claim. *See id.*

Relator's state-law based retaliation claim fails for the same reasons as her FCA retaliation claim as Relator fails to plead facts showing (1) she engaged in protected activity; (2) any "Defendant" knew Relator was engaging in protected activity; or (3) any causal connection between her allegedly protected activity and an adverse employment action taken against her.[7]

## VII.  Plaintiff's FLSA Allegations Fail as a Matter of Law.

Impermissibly relying on a mere recitation of the elements of a violation of the Fair Labor Standards Act, the FAC fails to satisfy the requirements of Federal Rule of Civil Procedure 8 and both Relator's individual FLSA claim, as well as the collective action claim, must be dismissed. An employee bringing an action for unpaid overtime compensation must first plead, and ultimately show by a preponderance of the evidence, that: (1) there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) the employee engaged in activities within the coverage of the FLSA; (3) the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *See, e.g., Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 441 (5th Cir. 2005)

---

[7] Following the general approach of federal courts, the court should dismiss the supplemental state law claims if the federal claims are dismissed. *See, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). For example, in *Enochs v. Lampasas County*, the Fifth Circuit ordered that a case be remanded to state court where the district court had dismissed all federal claims and only state law claims remained. 641 F.3d 155, 161, 163 (5th Cir. 2011). The Fifth Circuit noted that its "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Id.* at 161 (quoting *Parker & Parsley Petro Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992)).

(citing *Anderson v. Mount Clemens Pottery Co.,* 328 U.S. 680, 687–88, 66 S.Ct. 1187 (1946)); *Newton v. City of Henderson,* 47 F.3d 746, 748 (5th Cir. 1995).

Under the second element, which requires a plaintiff to plead that the employee engaged in activities covered by the FLSA, a plaintiff must offer well-pled facts showing that the employer was an enterprise engaged in interstate commerce or regularly owned and operated businesses engaged in commerce or in the production of goods for commerce as defined by the FLSA.[8] *See Collins-Laster v. Openroad Mgmt., Inc.,* A-18-CV-00120-LY, 2019 WL 3769961, at *3 (W.D. Tex. Aug. 9, 2019).

Relator offers no facts allowing for the inference that "Defendants" were engaged in commerce or in the production of goods for commerce. *See generally* Compl. Although Relator conclusorily alleges Defendants are covered enterprises for purposes of the FLSA, Relator alleges no facts regarding any "premises" on which any individuals reside (as required by 29 U.S.C. § 203(s)(1)(B)), nor does Relator allege facts showing that Defendants are an "activity of a public agency" (as required by 29 U.S.C § 203(s)(1)(C)).[9] Because Relator fails to allege facts showing Defendants fit the applicable definitions of a covered enterprise, these claims should be dismissed.

Besides the pleading failures, Relator's FLSA claim is time-barred. The FLSA is governed by a two-year statute of limitations for non-willful violations and a three-year period for willful violations. Here, the two-year statute of limitations should apply to Relator's claim, as Relator offers no well-pled facts allowing for an inference of willfulness. Indeed, the FAC offers only a conclusory allegation that

---

[8] Relator merely states twice that Defendants are "covered enterprises" without offering any well-pled facts to support these statements. *See* FAC ¶¶ 141–42.

[9] Relator alleges Defendants are covered by the FLSA because they are enterprises under 29 U.S.C. § 203(r)(2)(A) or (C). But these definitions are inapplicable here because they define only which activities are "performed for a business purpose." 29 U.S.C. § 203(r)(2). Relator's FLSA allegation stems from 29 U.S.C. § 207(a)(1) which applies to "an enterprise engaged in commerce or in the production of goods for commerce." FAC ¶ 53. For these reasons, Relator must show that Defendants are an "[e]nterprise engaged in commerce or in the production of goods for commerce" as defined in 29 U.S.C § 203(s)(1). Relator has failed to do so under these definitions.

the "Defendants' unlawful wage practices were willful and intentional." *Id.* ¶ 156; *see Zannikos v. Oil Inspections, Inc.*, 605 F. App'x 349, 360 (5ᵗʰ Cir. 2015). The Relator bears the burden of pleading, and ultimately of demonstrating, willfulness. *Id.* (citing *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5ᵗʰ Cir. 1990)). "Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable." *Id.* (citations omitted). "Rather, an employer's violation is willful only if it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute…." *Id.* (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132–33 (1988)). Willfulness has been found when an employer knew its pay structure violated the FLSA or ignored complaints that were brought to its attention. *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 553 n.24 (5ᵗʰ Cir. 2009).

Under these standards, the FAC fails to plead facts sufficient to infer that any of the "Defendants" acted willfully. In what looks like an attempt to sufficiently allege "Defendants'" willfulness, Relator alleges that after she complained about her wages—without mentioning any FLSA violation—she was retaliated against and "reprimanded [] in writing for 'snacking too much.'" FAC ¶¶ 151–52. Relator then undercuts her own allegations by alleging she told supervisors that she does, in fact, need to eat "more frequent meals," without further alleging that "Defendants" ignored her complaints, took further action against her, or understood the incident had anything to do with a purported FLSA violation. *Id.* ¶¶ 152–53; *see Ikossi-Anastasiou*, 579 F.3d at 553 n.24. In other words, Relator alleges she "complained," she was reprimanded for an unrelated reason, and nothing else happened. These allegations, along with conclusory allegations that "Defendants' management was aware that Relator and other Coordinators performed [] work duties off the clock," (FAC ¶ 117) fall short of any inference of willfulness by "Defendants." *See generally id.* With no such facts, the FLSA's two-year statute of limitations applies.

Applying the two-year statute of limitations, Relator's claims are time-barred. The only pay period in which Relator claimed she worked over 40 hours—May 16 to May 20, 2016—occurred more than two years before she filed her Original Complaint. *Id.* ¶ 150. Thus, the alleged violations of the FLSA are time-barred and should be dismissed. *Kansa Reinsurance Co. Ltd v. Cong. Mortgage Co. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994) ("when a successful affirmative defense appears on the face of the pleadings, dismissal under 12(b)(6) may be appropriate."); *United States ex rel. Long v GSD&M Idea City, LLC*, 798 F.3d 265, 275 (5th Cir. 2015) (same).

## VIII.   Any Allegations against KHI, KAH, and Harden Remain Deficient as a Matter of Law.

Relator's attempt to assert a claim against the direct and indirect corporate parents of Girling Healthcare, Inc. – KHI, KAH, and Harden (collectively, the "Corporate Parents") does not comply with Rules 8, 9(b), and 12(b)(6). The allegations against the Corporate Parents are as follows:

- KHI is a Delaware corporation headquartered in Louisville, Kentucky that was separated into two companies – KHI and KAH. (FAC ¶ 27);

- KAH was a division of KHI. (*Id.* ¶ 28);

- Harden is a wholly-owned subsidiary of KAH (*Id.* ¶ 30); and

- Girling is a wholly-owned subsidiary of Harden. (*Id.* ¶ 29)[10]

---

[10] Girling Healthcare, Inc. provides the community care services Relator discussed in the FAC. *See* https://www.kindredhealthcare.com/our-services/home-care/ about/ affiliates/girling-home-health-and-community-care (last visited March 23, 2020). In deciding a motion to dismiss, the Court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken under Federal Rule of Evidence 201(b). *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). Defendants therefore request that the Court take judicial notice of that website when considering this motion to dismiss. If the Court disagrees that judicial notice is proper, and consideration of this request would lead to the conversion of this motion to a motion for summary judgment, Defendants respectfully withdraw this request.

That is the extent of the allegations against the Corporate Parents. The FAC does not identify a single Corporate Parent employee, a single claim any Corporate Parent submitted, or any overt actions taken by any Corporate Parent. Relator's assumption that any Corporate Parent is responsible for Girling's liabilities because of direct or indirect ownership of Girling is incorrect. The simple existence of a parent-subsidiary relationship does not state a claim that any Corporate Parent was involved in the alleged conduct set forth in the FAC. *See Ligai*, 2014 WL 4649885, at *20. The mere status as a corporate parent fails to support an action against it for claims that its subsidiary may or may not have submitted. *See United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 59–60 (D.D.C. 2007) (citation omitted). And mere knowledge of submitting improper claims cannot establish FCA liability. *See United States ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 714 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S.Ct. 1507 (2019). Some sort of "affirmative action" that "causes the presentment of a false claim" is required for liability. *Id.* Here, the FAC is devoid of any particular allegations against any Corporate Parent, and there is no basis to find any Corporate Parent liable. *See generally* FAC.

## Conclusion

The submission of a [false] claim is the "*sine qua non* of an FCA violation." This touchstone of FCA litigation, married with the pleading standards of Rule 9(b), dictates that Relator must plead with the necessary particularity identifiable false claims were submitted by Defendants. It is not enough to conclusorily allege circumstances that the Relator supposes or assumes led to submitting false claims. Relator has failed to adequately plead her FCA claims, her state law analogue claims, or any other claims in her FAC. Furthermore, Relator's claims of retaliation and violations of the FLSA

remain deficient. As a result, the Amended Complaint should be dismissed.

Dated: May 22, 2020                          Respectfully submitted,

                                             /s/ Lucas C. Wohlford
                                             Lucas C. Wohlford
                                             State Bar No. 24070871
                                             lwohlford@btlaw.com
                                             **BARNES & THORNBURG LLP**
                                             2121 N. Pearl St., Suite 700
                                             Dallas, TX 75201-2469
                                             Telephone: (214) 258-4200
                                             Facsimile: (214) 258-4199

                                             **ATTORNEYS FOR DEFENDANTS**


**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 22nd day of May 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

                                             /s/ Lucas C. Wohlford
                                             Lucas C. Wohlford