# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA and THE STATE OF TEXAS, *ex rel*. Cecilia Young, and CECILIA YOUNG, individually and on behalf of others similarly situated, *Plaintiffs* | § § § § § § | |
| v. | § § | **Case No. 1:18-cv-00806-RP** |
| KINDRED HEALTHCARE, INC., KINDRED AT HOME, GIRLING HEALTH CARE, INC., and HARDEN HEALTHCARE, *Defendants* | § § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE ROBERT PITMAN
### UNITED STATES DISTRICT JUDGE

Before the Court are Defendants Kindred Healthcare, Inc., Kindred at Home, Girling Health Care, Inc., and Harden Healthcare, LLC's ("Defendants") Motion to Dismiss, filed on May 22, 2020 (Dkt. 20), and the associated response and reply briefs. The District Court referred the motion to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.    Background

This is a *qui tam* action arising under the False Claims Act and the Texas Medicaid Fraud Prevention Act brought by Cecilia Young against her former employer. Young alleges improper billing of Texas Medicaid, along with retaliation and violations of the Fair Labor Standards Act ("FLSA"). Young alleges that, in the course of her employment as a staffing coordinator and office

1

manager for Defendants' Austin office from March 2016 until September 2018, she discovered that Defendants were seeking reimbursement from Texas Medicaid for in-home personal care attendant services that were never performed. Dkt. 19 ¶¶ 1-2, 9, 25.

Young states that, for Defendants to receive reimbursement for services provided to Texas Medicaid beneficiaries, personal care attendants("PCAs") must validate their service hours in the Vesta electronic visit verification system. *Id.* ¶ 3, 55. When PCAs fail to do so, Defendants employ staffing coordinators to verify the details of the visit by calling PCAs and their clients to confirm that the services were provided and the claimed hours are correct. *Id.* ¶ 6. Young alleges that Defendants' staffing coordinators routinely failed to verify details of visits and instead submitted false documentation for services that were not provided. *Id.* ¶ 8. Young contends that the practice keeps coordinators above a target utilization percentage set by Defendants and results in the submission of false claims for payment to Texas Medicaid. *Id.* ¶¶ 67-68, 74-77.

After she was promoted from coordinator to office manager, Young required the coordinators to amend any previously submitted false verifications, which dropped the utilization percentages dramatically. *Id.* ¶ 132. Young alleges that she was instructed by Laverne Fowler, Director of Defendants' Austin Office, and Julie Eberwine, Defendants' Regional Director of Operations, to stop calling PCAs and clients to confirm visit details, and that she should be concerned with billing more rather than billing accurately. *Id.* ¶ 135. On August 22, 2018, Young called Kindred Healthcare's corporate compliance hotline regarding the alleged submission of false claims and her discussions with Fowler and Eberwine. *Id.* ¶ 137. Eberwine terminated Young's employment on September 4, 2018. *Id.* ¶ 138.

On September 21, 2018, Young sued on behalf of the United States, the State of Texas, and herself individually. Dkt. 2. On November 27, 2019, the United States and the State of Texas

declined to intervene, allowing Young to maintain the action in their names. Dkt. 11. Defendants

now seek dismissal of all Young's claims under Federal Rule of Civil Procedure 12(b)(6).

## II.     Legal Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which

relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the

court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the

plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal

quotation marks omitted). The Supreme Court has explained that a complaint must contain

sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556

U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does
> not need detailed factual allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do. Factual allegations must be enough to raise a right
> to relief above the speculative level, on the assumption that all the
> allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any

documents attached to the complaint, and any documents attached to the motion to dismiss that

are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays*

*Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III.     Analysis

Defendants argue that Young's claims under the under the False Claims Act and Texas

Medicaid Fraud Prevention Act should be dismissed because she neither provides details regarding

any specific claim that was falsely and knowingly presented, as required by Federal Rule of Civil Procedure 9(b), nor sufficiently alleges a scheme to defraud. Defendants further argue that Young's retaliation claims should be dismissed because she has not pled adequate facts to support the requisite elements. Defendants also assert that Young's FLSA claims are time-barred and that she failed to plead essential elements to establish FLSA coverage. Finally, Defendants contend that Young engages in improper group pleading by failing to distinguish among the alleged actions of the Defendants and by failing to show that the direct and indirect corporate parents are liable for the actions of Girling Health Care, Inc.

## A. False Claims Act

The False Claims Act ("FCA") prohibits making fraudulent claims for payment to the United States. *Riddle v. Dynacorp Int'l Inc.*, 666 F.3d 940, 941 (5th Cir. 2012). Specifically, the FCA prohibits (1) the presentment of a false claim to the Government, (2) the use of a false record or statement to get a false claim paid, and (3) conspiracies to get a false claim paid. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 183 (5th Cir. 2009); 31 U.S.C. § 3729(a)(1). A complaint alleging fraud under the FCA and the Texas Medicaid Fraud Prevention Act also must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See Grubbs*, 565 F.3d at 185-86 (noting that Rule 9(b) requires simple, concise, and direct allegations of the circumstances constituting fraud).

### 1. Knowing Presentment of a False Claim under 31 U.S.C. § 3729(a)(1)(A)

Section 3729(a)(1)(A) attaches liability to anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." Even under the heightened pleading requirements of Rule 9(b), detailed factual recitations are not required at the pleading

4

stage of an FCA case. *Swadley v. Scott & White Mem'l Hosp.*, Case No. A-09-CA-549-SS, 2012 WL 13148799, at *2 (W.D. Tex. July 10, 2012). A plaintiff does not need exact billing numbers or dollar amounts to prove by a preponderance of the evidence that fraudulent bills were submitted. *Grubbs*, 565 F.3d at 192. Instead, fraudulent presentment requires proof only of the claim's falsity, not of its exact contents. *Id.* at 189. A plaintiff may meet the pleading requirement for knowing presentment "by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference [false] claims were actually submitted." *Id.* at 190; *see also United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893 (5th Cir. 2013) (finding that a relator could satisfy Rule 9(b) by providing factual or statistical evidence to strengthen the inference of fraud without providing details as to each false claim).

Here, Young has satisfied the presentment element by alleging in detail a scheme by Defendants to submit false claims. As a former coordinator and office manager who was directly involved with billing for PCA services, Young alleges that Defendants took advantage of features in the Vesta system permitting manual confirmation of home services to submit claims for services that were not rendered. Dkt. 19 ¶¶ 59-62, 79. Because the Vesta system automatically submitted all verified payments to Medicaid every two weeks, Young's allegations that fraudulent claims were placed into the Vesta system allows a strong inference that false claims were submitted, even absent details of any particular false claim. *Id.*

Young also provides specific examples of at least two Texas Medicaid clients for whom PCA services were never performed, but for which Defendants billed Texas Medicaid. *Id.* ¶¶ 88-95, 100-05. In addition, Young alleges that when she raised her concerns about fraudulent billing with Fowler and Eberwine, she was told to "worry about billing *more* instead of billing *accurately*." *Id.* ¶ 135. Fraudulent intent or knowing presentment of false claims could be inferred from the

foregoing statement. *See Swadley*, 2012 WL 13148799, at *2 (denying motion to dismiss FCA claim where complaint included alleged statement by Defendant from which knowing presentment could be inferred). The Court therefore recommends that Defendants' Motion to Dismiss Young's FCA presentment claim be denied.

### 2. Knowingly Making a False Record under 31 U.S.C. § 3729(a)(1)(B)

Section 3729(a)(1)(B) attaches liability to anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Young asserts the same theory for both her presentment claim under Section 3729(a)(1)(A) and her false record claim under Section 3729(a)(1)(B): Defendants knowingly made and submitted false claims through the Vesta system to seek payment from Texas Medicaid for PCA services that were never rendered. Dkt. 19 ¶¶ 55, 59, 61-62, 75-80, 135. Young alleges that Defendants used the false records its coordinators entered into the Vesta system to present false claims to the government. *Id.* Young alleges that creating false records was the mechanism by which Defendants would present false claims for payment. Therefore, she has stated a claim under the FCA's record provision. *See United States ex rel. Wismer v. Branch Banking & Trust Co.*, Civil Action No. 3:12-CV-1894-B, 2013 WL 5989312, at *3 n.5 (N.D. Tex. Nov. 12, 2013) (noting elements for presentment and record provisions can be the same where relator asserted same theory for both provisions) (citing *Gonzales v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 475 (5th Cir. 2012)). The Court therefore recommends that Defendants' Motion to Dismiss Young's false record claim be denied.

### 3. State Law Claims under the Texas Medicaid Fraud Prevention Act

The Texas Medicaid Fraud Prevention Act ("TMFPA") imposes civil liability on any person who knowingly makes or causes to be made a false statement or misrepresentation of a material

fact that permits a person to receive unauthorized payment under the Medicaid program. TEX. HUM. RES. CODE §§ 36.002(1)-(2) (2015). The Texas Supreme Court has described the TMFPA as analogous to the FCA in "aim and tactic," while noting that the two statutes use different language. *In re Xerox*, 555 S.W.3d 518, 535 (Tex. 2018).

Here, the State of Texas filed a Statement of Interest arguing that the scope of activity prohibited under the TMFPA is broader than under the FCA because the TMFPA does not require presentment of a false claim; nor does it require a showing that the unlawful act was material to payment to impose liability. Dkt. 22; *see also United States ex rel. Patel v. Catholic Health Initiatives*, 312 F. Supp. 2d 584, 607 (S.D. Tex. 2018), *aff'd*, 792 F. App'x 296 (5th Cir. 2019) (adopting state's position that TMFPA would penalize all conduct violating FCA and also reach broader range of false or fraudulent conduct less closely tied to Medicaid claim submission process).

The Court need not decide whether the TMFPA is broader than the FCA. The undersigned concludes that, because Young has met the FCA pleading standard, she also has stated a claim under the TMFPA, and therefore recommends that Defendants' Motion to Dismiss Young's TMFPA claims be denied.

### 4. Retaliation Claim

The "whistleblower" provision of the FCA prevents the harassment, retaliation, or threatening of employees who bring or assist in *qui tam* actions. *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994); *see also* 31 U.S.C. § 3730(h) (prohibiting retaliation against employee because of "lawful acts done . . . in furtherance of an action under this section or other efforts to stop one of more violations of this subchapter"). The TMFPA contains a parallel provision. *United States ex rel. Simms v. Austin Radiological Ass'n*, Cause No. A-10-CV-914-LY,

2012 WL 12850250, at \*7 (W.D. Tex. Aug. 29, 2012) (citing TEX. HUM. RES. CODE § 36.115 (2013)).

To bring a retaliation claim for termination, an employee must show that (1) she engaged in activity protected under the statute; (2) her employer knew she engaged in protected activity; and (3) she was discharged because of it. *Robertson,* 32 F.3d at 951.[1] To be protected activity, an employee's actions must be aimed at matters that could lead to a viable FCA claim. *United States ex rel. George v. Boston Sci. Corp.*, 864 F. Supp. 2d 597, 605 (S.D. Tex. 2012). Internal complaints concerning false or fraudulent claims for payment submitted to the government are protected activity. *United States ex rel. Patton v. Shaw Servs. LLC*, 418 F. App'x 366, 372 (5th Cir. 2011). In addition, causation may be established at the prima facie stage by temporal proximately alone if the protected act and the adverse employment action are very close in time. *See, e.g.*, *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (finding six-and-a-half-week timeframe between protected activity and adverse employment action sufficient to satisfy causation requirement).

The allegations in Young's First Amended Complaint are sufficient to satisfy each element of her retaliation claim. Young alleges that she undertook an audit to correct Defendants' previous Vesta submissions containing false claims. Dkt. 19 ¶¶ 83-86, 131-33. Young further alleges that she engaged in activity protected under the statute, and that her supervisors were aware of that protected activity, when she complained to Fowler and Eberwine about the submission of false claims, then called the Defendants' compliance hotline. *Id.* ¶¶ 134-37. Eberwine fired Young

---

[1] Young's retaliation claims are not subject to the heightened pleading requirements of Rule 9(b) and only need satisfy Rule 8's requirement of a short and plain statement. *Paige v. AM Hospice, Inc.*, No. 3:19-CV-319-PRM, 2020 WL 2543301, at \*2 (W.D. Tex. May 15, 2020).

thirteen days after her call. *Id.* ¶ 138. Because Young has alleged facts to support each element of her retaliation claims, the Court recommends that Defendants' Motion to Dismiss be denied.

## B.  Fair Labor Standards Act

The FLSA requires overtime pay when a workweek is longer than forty hours. 29 U.S.C. § 207(a)(1). To state a prima facie case for overtime compensation under the FLSA, a plaintiff must show: (1) an employer-employee relationship existed during the unpaid overtime periods claimed; (2) the employee engaged in activities within the coverage of the FLSA; (3) the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019). The plaintiff bears the burden to show that the FLSA applies. *Sobrinio v. Med. Ctr. Visitor's Lodge Inc.*, 474 F.3d 828, 830 (5th Cir. 2007). Defendants argue that Young has not satisfied the second element, and that her FLSA claims are time-barred. Dkt. 20 at 23-25.

### 1.  Covered Enterprise

The FLSA guarantees minimum wage and overtime compensation for employees who are employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §§ 206(a), 207(a). Among the enterprises specifically covered by the FLSA are those engaged in the "operation of a hospital or an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution." 29 U.S.C. § 203(s)(1)(B).

Although Young failed to cite § 203(s)(1)(B), her First Amended Complaint contains allegations sufficient to show that Defendants are a covered enterprise under the FLSA. Dkt. 19 ¶¶ 27, 141. Young alleges that Defendants operate "long-term acute care hospitals and rehabilitation services" and are "primarily engaged in the care of the sick, the aged, the mentally

ill, or individuals with disabilities residing on the premises." *Id.* Taking her allegations as true, Young has alleged enterprise coverage under the FLSA. The Court therefore recommends that Defendant's Motion to Dismiss the FLSA claims based on covered enterprise status be denied.

## 2.  Statute of Limitations

There is a two-year statute of limitations for FLSA claims, except for willful violations, which may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a). A violation is willful when an employer knew or showed reckless disregard as to whether its conduct was prohibited by the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). FLSA regulations define "reckless disregard" as failure to make an adequate inquiry into whether conduct complies with the FLSA. 5 C.F.R. § 551.104 (2007). The burden is on the plaintiff to show willfulness. *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016).

Young has alleged sufficient facts to demonstrate a plausible claim that Defendants acted willfully. For example, Young alleges that Defendants had a policy of not allowing staffing coordinators to "clock in" for more than forty hours per week regardless of actual hours worked and routinely forced them to work "off the clock" to complete verifications. Dkt. 19 ¶ 144-49. Young further alleges that management was aware that coordinators performed work duties without compensation. *Id.* ¶ 146. Young also asserts that, when she raised the issue with her supervisors, her request for overtime pay was denied and she suffered retaliation. *Id.* ¶ 151-53.

Young has alleged facts that, taken as true, would have triggered Defendants' duty to investigate whether coordinators were working off the clock and without compensation. Therefore, she has stated a plausible claim for a willful violation. *See Ferguson v. Tex. Farm Bureau Bus. Corp.*, Civil Action No. 6:17-CV-00111, 2017 WL 7053927, at *6 (W.D. Tex. July 26, 2017)

(finding that factual allegations giving rise to a duty to investigate FLSA compliance state a claim for willfulness).

Young filed suit on September 21, 2018. Dkt. 2. Because her First Amended Complaint contains allegations satisfying the pleading requirement for willfulness, her claim is subject to a three-year limitations period, and she can bring claims that accrued on or after September 21, 2015. In her First Amended Complaint, Young provides an example of a workweek in May 2016 when she worked more than 40 hours but was not compensated for the overtime hours she worked. Dkt. 19 ¶ 150-51. Young's FLSA claims therefore are not time-barred.

## C.  Group Pleading and Corporate Liability

Finally, Defendants argue that because Young fails to identify which Defendant engaged in what activity, her FCA claims should be dismissed under Rule 9(b) as an impermissible group pleading. Dkt. 20 at 10-11. Defendants further argue that Young has failed to detail the relationship among the direct and indirect parents of Girling Healthcare, Inc. and, therefore, has not established corporate parent liability *Id.* at 25-26. Young responds that she has shown that all Defendants participated in the scheme to submit false claims under the *Grubbs* standard and otherwise has included separate allegations against each defendant. Dkt. 33 at 15-16.

Group pleadings generally are prohibited when a complaint is subject to Rule 9(b). *U.S. v. Lakeway Reg'l Med. Ctr.*, Case No. A-19-CV-00945-JRN, 2020 WL 6146571, at *2 (W.D. Tex. Feb. 13, 2020). Attributing discrete actions to all defendants without explaining the basis for the grouping or distinguishing between the relevant conduct is improper under Rule 9(b). *Id.* While Young does identify each defendant and allege the corporate relationships among the four entities, she engages in group pleading for many of the allegations supporting her FCA claims, which does

not satisfy the heightened pleading requirements of Rule 9(b). Dkt. 19 ¶¶ 27-30; *see also id.* ¶¶ 57-130, 157-73 (referring to "Defendants" collectively).

A plaintiff's failure to meet pleading requirements should not automatically or inflexibly result in dismissal of a complaint with prejudice to refiling. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). Although a court ultimately may dismiss the claim, it should not do so without granting leave to amend, unless the defect is incurable or the plaintiff has been given repeated opportunities to replead with particularity. *Id.*

Young included in her response a request for leave to amend her First Amended Complaint if the Court grants any part of Defendant's motion to dismiss. Dkt. 33 at 24-25. The Court therefore recommends that Defendant's Motion to Dismiss be granted without prejudice as to Counts 1, 2, 3, and 4 and that Young be granted leave to amend her First Amended Complaint to bring the party allegations into compliance with Rule 9(b) and to resolve any other inadequacies. *See* FED. R. CIV. P. 15(a)(2) (leave to amend should be freely given).

## IV.     Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss First Amended Complaint (Dkt. 20) be **GRANTED IN PART AND DENIED IN PART**. The Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion and **DISMISS** without prejudice Counts 1, 2, 3, and 4 and **DENY** the Motion as to Counts 5, 6, 7, and 8. The Court further **RECOMMENDS** that the District Court **GRANT** Plaintiff leave to file an amended complaint.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on December 30, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE